UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

SEALED

UNITED STATES OF AMERICA

v.

LEONARD G. POTILLO, III

CASE NO. 6:14-cr- 128-ORL-36GJK
18 U.S.C. § 1343
18 U.S.C. § 215(a)(1)
18 U.S.C. § 1957
18 U.S.C. § 981(a)(1)(C) - Forfeiture
28 U.S.C. § 2461(c) - Forfeiture
18 U.S.C. § 982(a) - Forfeiture

# INDICTMENT

The Grand Jury charges:

## COUNTS ONE THROUGH SEVEN
(Wire Fraud)

### A. Introduction

At times material to this Indictment:

1. United Credit Recovery, LLC (UCR) was a corporation registered with the Florida Department of State. Its principle place of business was located in Seminole County, Florida and it was incorporated in March 2009. The principal purpose of UCR's business was the collection of debts. UCR purchased charged-off consumer "overdraft" debt for both the purpose of the collection of that debt and the purpose of selling the debt to third-parties at a profit. UCR advertised on its website, www.unitedcreditrecovery.com, that it purchased in excess of $10 billion of overdraft debts from financial institutions such as U.S. Bank, N.A. and Wells Fargo, N.A, among others.

2. Overdraft debt consisted of charged off fees and principal that bank customers allegedly owed on overdrawn checking and savings accounts. Under the terms of a bank's agreement with their customers, the banks were entitled to charge insufficient fund and overdraft fees. Those fees often accrued over time, increasing the amount of debt owed by a customer who has overdrawn his or her account.

3. Pursuant to Federal regulations, financial institutions were required to "charge off" certain consumer debt that was delinquent for a specified period, often only 120 days.

4. When a financial institution charged-off a debt, it realized a loss but the borrower continues to have an obligation to repay the debt.

5. To reduce losses associated with their charged off debt, financial institutions sold the overdraft debt to third-party debt purchasers, thereby assigning to the third-party debt purchasers the right to collect on the charged-off accounts.

6. Each sale of charged-off debt typically involved hundreds to thousands of individual accounts, with the combined balance of the sold overdraft debt often exceeding tens of millions of dollars. As consideration for the sold debt, financial institutions typically received only a small fraction of the total amount they would have received if the overdraft debt had been paid in full.

7. The value of an overdraft debt portfolio sold by a financial institution differed depending on how many attempts there were to collect the debt by a debt

collection agency. "One agency" means that there was only one attempt to collect the debt, usually by the original financial institution. "Zero agency" debt was never called upon, usually signifying the greatest chance of collection by the holder of that debt. As a result, zero agency debt demanded a premium price be paid by debt collection agencies. "Two agency" debt meant there were two attempts to collect the debt. "Two agency" debt had less market value than "one agency" or "zero agency" debt.

8. UCR sold overdraft debt to more than one hundred (100) third-party debt purchasers including Regent Asset Management Solutions, Imperial Recovery Partners, LLC, Bradstreet and Associates, LLC, and Liberty Acquisitions Servicing, LLC.

9. Defendant LEONARD G. POTILLO, III was the Manager/Owner of UCR and was responsible for UCR's day-to-day operations. Defendant LEONARD G. POTILLO, III formulated, directed, controlled, had the authority to control, and participated in the acts and practices of UCR.

10. U.S. Bank, N.A. (U.S. Bank) was a financial institution, the accounts and deposits of which were federally insured by the Federal Deposit Insurance Corporation (FDIC) and the activities of which affected interstate commerce. The headquarters of U.S. Bank were located in Minneapolis, Minnesota. U.S. Bank received funds from the Troubled Asset Relief Program (TARP).

11. Wells Fargo, N.A. (Wells Fargo) was a financial institution, the accounts and deposits of which were federally insured by the FDIC and the

activities of which affected interstate commerce. The headquarters of Wells Fargo were located in San Francisco, California.

12. Wachovia Bank, now Wells Fargo, was a financial institution the accounts and deposits of which were federally insured by the FDIC and the activities of which affected interstate commerce.

13. Bank of America was a financial institution, the accounts and deposits of which were federally insured by the FDIC and the activities of which affected interstate commerce. The headquarters of Bank of America were located in Charlotte, North Carolina.

14. Wire transfers were routed through the Federal Reserve Banking System and cleared through Federal Reserve operations center in East Rutherford, New Jersey.

**B. <u>The Scheme</u>**

15. Beginning on an unknown date, but at least from as early as in or about January 2008, and continuing through the date of this indictment, in Seminole County, in the Middle District of Florida, and elsewhere,

**LEONARD G. POTILLO, III**

the defendant herein, did knowingly and willfully devise and intend to devise a scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, and did transmit and cause to be transmitted by means of wire and radio communications

in interstate and foreign commerce, writings, signs, signals, pictures and sounds for the purpose of executing said scheme and artifice.

**C. <u>The Manner and Means of the Scheme</u>**

16. The manner and means by which the defendant sought to accomplish the scheme and artifice included, among others things, the following:

(a) It was a part of the scheme and artifice that defendant LEONARD G. POTILLO, III would unlawfully execute a scheme to defraud third-party debt purchasers out of more than $70 million in money and property by means of false and fraudulent pretenses, representations, and promises.

(b) It was a further part of the scheme and artifice that defendant LEONARD G. POTILLO, III and UCR bought "two agency" overdraft debt electronic portfolios from financial institutions and sold the debt to third-party debt purchasers by falsely representing it as "zero agency" debt and "one agency" debt.

(c) It was a further part of the scheme and artifice that, in reliance on the misrepresentations made by the defendant LEONARD G. POTILLO, III and UCR, the third-party debt purchasers bought lower quality debt disguised as premium debt.

(d) It was a further part of the scheme and artifice that defendant LEONARD G. POTILLO, III and UCR created, on mass scale, fictitious "Affidavits of Correctness/Assignments" that were purportedly signed by officers of the original banks and purportedly notarized by bank employees.

(e) It was a further part of the scheme and artifice that, defendant LEONARD G. POTILLO, IIII would add a bank's trademarked logo at the top of the fictitious affidavits to make them appear authentic.

(f) It was a further part of the scheme and artifice that, defendant LEONARD G. POTILLO, IIII used the fictitious affidavits to "confirm" the quality of the debt accounts to third-party debt purchasers to which UCR resold the debt.

(g) It was a further part of the scheme and artifice that, in order for defendant LEONARD G. POTILLO, III and UCR to purchase debt portfolios from U.S. Bank, more than $1 million in bribe payments were made to a bank official, "W.T." These bribes were for inside information that enabled UCR to purchase approximately 11 portfolios of overdraft debt for $31 million with an approximate face value of more than $820 million, or less than four cents on the dollar.

(h) It was a further part of the scheme and artifice that, defendant LEONARD G. POTILLO, III listed fictitious names on corporate documents and signed contracts with third-party debt purchasers using the fictitious names "Steven Burks" and "Edward Thompson."

17. It was a further part of the scheme and artifice that the defendant would and did perform acts and make statements to hide and conceal, and cause to be hidden and concealed, the purposes of, and the acts done in furtherance of, said scheme and artifice.

### D. Execution of the Scheme

18. On or about the dates set forth below, in the Middle District of Florida and elsewhere, for the purpose of executing and attempting to execute the aforesaid scheme and artifice, the defendant did cause to be transmitted by means of wire communication in interstate and foreign commerce the following:

| Count | Date | Nature of Wire |
|---|---|---|
| 1 | June 12, 2009 | Wire transfer in the amount of $200,000 from a Great Western Bank account in the name of Regent Asset Management Solutions via the Federal Reserve Bank operations center in New Jersey, to a Bank of America account in the name of UCR representing proceeds of UCR's sale of a debt portfolio |
| 2 | November 16, 2009 | Wire transfer in the amount of $235,487.98 from a Great Western Bank account in the name of Regent Asset Management Solutions via the Federal Reserve Bank operations center in New Jersey, to a Bank of America account in the name of UCR representing proceeds of UCR's sale of a debt portfolio |
| 3 | March 31, 2010 | Wire transfer in the amount of $534,544.42 from a Great Western Bank account in the name of Regent Asset Management Solutions via the Federal Reserve Bank operations center in New Jersey, to a Bank of America account in the name of UCR representing proceeds of UCR's sale of a debt portfolio |
| 4 | October 5, 2010 | Wire transfer in the amount of $200,000 from a Great Western Bank account in the name of Regent Asset Management Solutions via the Federal Reserve Bank operations center in New Jersey, to a Bank of America account in the name of UCR representing proceeds of UCR's sale of a debt portfolio |
| 5 | March 16, 2011 | Wire transfer in the amount of $49,302.93 from a Citizens Independent Bank account in the name of Bridgestone and Associates via the Federal Reserve Bank operations center in New Jersey, to a Bank of America account in the name of UCR representing proceeds of UCR's sale of a debt portfolio |

| | | |
|---|---|---|
| 6 | May 24, 2011 | Wire transfer in the amount of $104,300.89 from a Citizens Independent account in the name of Bradstreet and Associates, LLC via the Federal Reserve Bank operations center in New Jersey, to a Bank of America account in the name of UCR representing proceeds of UCR's sale of a debt portfolio |
| 7 | July 22, 2011 | Wire transfer in the amount of $116,824.32 from a Citizens Independent Bank account in the name of Bradstreet and Associates, LLC via the Federal Reserve Bank operations center in New Jersey, to a Bank of America account in the name of UCR representing proceeds of UCR's sale of a debt portfolio |

In violation of Title 18, United States Code, Sections 1343.

**COUNTS EIGHT THROUGH SEVENTEEN**
(Bribery of a Bank Official)

19. On or about the dates set forth below, in the Middle District of Florida, in Seminole County, Florida and elsewhere,

**LEONARD G. POTILLO, III**

the defendant herein, corruptly gave, offered, and promised money in the amounts specified below to "W.T.," an officer, director, employee, and agent of U.S. Bank, a "financial institution" as defined by Title 18, United States Code, Section 20 as its deposits are insured by the Federal Deposit Insurance Corporation, with the intent to influence and reward "W.T." in connection with a transaction and business of U.S. Bank, in that the defendant purchased inside information relating to the auction of overdraft debt portfolios:

| Count | Date | Amount |
|---|---|---|
| 8 | June 8, 2009 | $15,000 |
| 9 | September 15, 2009 | $20,000 |
| 10 | November 25, 2009 | $15,000 |
| 11 | April 14, 2010 | $50,000 |
| 12 | October 12, 2010 | $10,000 |
| 13 | January 31, 2011 | $20,000 |
| 14 | March 2, 2011 | $20,000 |
| 15 | June 1, 2011 | $15,000 |
| 16 | July 28, 2011 | $45,000 |
| 17 | October 17, 2012 | $4,000 |

In violation of Title 18, United States Code, Section 215(a)(1).

**COUNTS EIGHTEEN THROUGH THIRTY-THREE**
(Unlawful Monetary Transactions)

20. On or about the dates set forth below, in the Middle District of Florida, in Seminole County, Florida and elsewhere,

**LEONARD G. POTILLO, III**

the defendant herein, did knowingly and willfully engage and attempt to engage in the following described monetary transactions affecting interstate and foreign commerce in criminally derived property, of a value greater than $10,000 and derived from specified unlawful activity, namely wire fraud (18 U.S.C. § 1343):

| Count | Date | Monetary Transaction Affecting Interstate and Foreign Commerce |
|---|---|---|
| 18 | April 30, 2010 | Transfer via wire from UCR's account at Bank of America in the amount of $41,699.59 to the Royal Bank of Canada towards for purchase of Wilson Loft, Unit 902, Montreal, Canada |
| 19 | August 30, 2010 | Transfer via wire from UCR's account at Bank of America in the amount of $362,535.32 to an account at the Royal Bank of Scotland for the purchase of a flat in Edinburgh, Scotland |

| | | |
|---|---|---|
| 20 | January 25, 2011 | Transfer via wire from UCR's account at Bank of America in the amount of $27,674.82 to Eastern Western Motor Group's account at The Bank of Scotland for the purchase of a Honda vehicle |
| 21 | February 8, 2011 | Transfer via wire from UCR's account at Bank of America in the amount of $11,544.40 to Loan Service Center the mortgage servicer for the mortgage on 1882 Oakbrook Dr., Longwood, FL |
| 22 | March 8, 2011 | Transfer via wire from UCR's account at Bank of America in the amount of $11,544.40 to Loan Service Center the mortgage servicer for the mortgage on 1882 Oakbrook Dr., Longwood |
| 23 | April 7, 2011 | Transfer via wire from UCR's account at Bank of America in the amount of $11,462.80 to Loan Service Center the mortgage servicer for the mortgage on 1882 Oakbrook Dr., Longwood, FL |
| 24 | May 4, 2011 | Transfer via wire from UCR's account at Bank of America in the amount of $78,385.76 made payable to Fidelity Motor Group for the purchase of a 2008 Maserati Grantourismo |
| 25 | October 12, 2011 | Transfer via wire from UCR's account at Bank of America in the amount of $152,204.40 to an account at the Royal Bank of Canada for the purchase of Wilson Loft, Unit 902, Montreal, Canada |
| 26 | November 8, 2011 | Transfer via wire from UCR's account at Bank of America in the amount of $201,185.12 to an account at the Royal Bank of Canada for the purchase of Wilson Loft, Unit 902, Montreal, Canada |
| 27 | May 11, 2012 | Transfer via wire from UCR's account at Bank of America in the amount of $170,594.83 made payable to Straight Line Automotive for the purchase of a 2007 Ferrari |
| 28 | June 18, 2012 | Transfer via wire from UCR's account at Bank of America in the amount of $246,301.70 to American Title for the purchase of 889 Lakeworth Circle, Heathrow, FL |
| 29 | July 5, 2012 | Transfer via wire from UCR's account at Bank of America in the amount of $40,000 to Premier Title for the purchase of 2106 SE 7th Street, Pompano Beach, FL |
| 30 | August 30, 2012 | Transfer via wire from UCR's account at Bank of America in the amount of $230,000 to a settlement agent's account for the purchase of 2106 SE 7th Street, Pompano Beach, FL |

| | | |
|---|---|---|
| 31 | October 26, 2012 | Transfer via wire from UCR's account at Bank of America in the amount of $40,743.44 to Arnold Clark Auto Dealer's account at The Royal Bank of Scotland for the purchase of a vehicle |
| 32 | July 22, 2013 | Purchase via check no. 2213 drawn on an account at Bank of America in the amount of $92,900.69 made payable to Jaguar of Orlando for the purchase of a 2014 convertible Jaguar |
| 33 | March 6, 2014 | Purchase via check no. 163 drawn on an account at Bank of America in the amount of $122,917 made payable to Aston Martin of Orlando for the purchase of a 2010 Aston Martin |

In violation of Title 18, United States Code, Section 1957 and Section 2.

**FORFEITURES**

1. The allegations contained in Counts One through Seven of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to the provisions of Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

2. Upon his conviction of any one of the violations alleged in Counts One through Seven of this Indictment, punishable by imprisonment for more than one year, the defendant,

**LEONARD G. POTILLO, III**

shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), all of his interest in any property constituting or derived from proceeds obtained directly or indirectly as a result of the said violations. The assets to be forfeited specifically include, but are not limited to the following:

**A. Vehicles**

1. 2008 Maserati Granturismo Coupe VIN: ZAMGJ45A780039082, titled to Leonard George Potillo;

2. 2007 Ferrari VIN: ZFFFC60A870150124, titled Magna Carta Asset, LLC;

3. 2014 Jaguar Convertible VIN: SAJWA6FC8E8K04065, titled to United Credit Recovery;

4. 2010 Aston Martin DBS Volante Convertible VIN: SCFFDCCDG86E12001, titled to Magna Carta Asset, LLC and Leonard Potillo III;

5. The Honda purchased in January/February 2011 from Eastern Western Motor Group in Scotland; and

6. The vehicle purchased in October/November 2012 from Arnold Clark Auto Dealer in Scotland.

**B. Financial Accounts**

1. Contents of TD Ameritrade Account No. 755-891703 held in the name of Leonard G. Potillo;

2. Contents of TD Ameritrade Account No. 755-930864 held in the name of Leonard G. Potillo;

3. Contents of TD Ameritrade Account No. 756-090194 held in the name of Leonard G. Potillo;

4. Contents of TD Ameritrade Account No. 756-194032 held in the name of Leonard G. Potillo;

5. Contents of TD Ameritrade Account No. 756-201031 held in the name of Leonard G. Potillo;

6. Contents of TD Ameritrade Account No. 756-201185 held in the name of Leonard G. Potillo; and

7. Contents of TD Ameritrade Account No. 756-208545 held in the name of Leonard G. Potillo.

**C. Real Property**

1. 1882 Oakbrook Dr., Longwood, FL, titled in the name of Leonard G. Potillo;

2. 3357 Park Grove, Longwood, FL, titled in the name of Michael A. Schuler;

3. 2106 SE 7 Street, Pompano Beach, FL, titled in the name of Magnacarta Asset, LLC;

4. Wilson Loft, Unit 902, Montreal, Canada; and

5. 30 Littlejohn, Edinburgh, Scotland – purchased in August/September 2011.

**D. A money judgment of at least $76 million representing the proceeds obtained from the wire fraud scheme alleged in Counts One through Seven of the Indictment.**

3. The allegations contained in Counts Eight through Seventeen of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to the provisions of Title 18, United States Code, Section 982(a)(2)(A).

4. Upon conviction of any one of the violations alleged in Counts Eight through Seventeen, the defendant, **LEONARD G. POTILLO, III**, shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 982(a)(2)(A), any and all right, title, and interest he has in any property constituting, or derived from, proceeds the person obtained directly or indirectly, as a result of such violation(s).

5. The allegations contained in Counts Nine through Thirty-Three of this Indictment are hereby realleged and incorporated by reference for the purpose

of alleging forfeitures pursuant to the provisions of Title 18, United States Code, Section 982(a)(1).

6. Upon conviction of the violations alleged in Counts Nine through Thirty-Three of this Indictment, punishable by imprisonment for more than one year, the defendant

**LEONARD G. POTILLO, III**

shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 982(a)(1) any property, real or personal, involved in such offense, or any property traceable to such property. The property to be forfeited specifically includes, but is not limited to the following:

A. Wilson Loft, Unit 902, Montreal, Canada (Counts 18, 25 and 26);

B. The real property purchased in August/September 2011 in Edinburgh, Scotland (Count 19);

C. The Honda purchased in January/February 2011 from Eastern Western Motor Group in Scotland (Count 20);

D. 1882 Oakbrook Dr., Longwood, FL, titled in the name of Leonard G. Potillo (Counts 21, 22, and 23);

E. 2008 Maserati Granturismo Coupe VIN: ZAMGJ45A780039082, titled to Leonard George Potillo (Count 24);

F. 2007 Ferrari VIN: ZFFFC60A870150124, titled Magna Carta Asset, LLC (Count 27);

G. 2106 SE 7th Street, Pompano Beach, FL, titled in the name of Magnacarta Asset, LLC (Counts 29 and 30);

H. The vehicle purchased in October/November 2012 from Arnold Clark Auto Dealer in Scotland (Count 31);

I. 2014 Jaguar Convertible VIN: SAJWA6FC8E8K04065, titled to

United Credit Recovery (Count 32); and

J. 2010 Aston Martin DBS Volante Convertible VIN: SCFFDCCDG86E12001, titled to Magna Carta Asset, LLC and Leonard Potillo III (Count 33).

7. If any of the property described above, as a result of any act or omission of the defendant:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third-party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p), as incorporated by Title 8, United States Code, Section 981(b)(1) and Title 28, United States Code, Section 2461(c).

A TRUE BILL,

Foreperson

A. LEE BENTLEY, III
United States Attorney

By:
David Haas
Assistant United States Attorney

By:
Carlos A. Perez-Irizarry
Assistant United States Attorney
Deputy Chief, Orlando Division

FORM OBD-34
APR 1991

No.

**UNITED STATES DISTRICT COURT**
Middle District of Florida
Orlando Division

THE UNITED STATES OF AMERICA

vs.

LEONARD G. POTILLO, III

**INDICTMENT**

Violations:

18 U.S.C. § 215(a)(1)
18 U.S.C. § 1343
18 U.S.C. § 1957

A true bill,

______________________
Foreperson

Filed in open court this 4th day

of June, 2014.

______________________
Clerk

Bail $______________